UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

RnD Engineering, LLC, et al.,[1]

    Debtors.
_____/

Chapter 11
Case No. 14-58049
(Jointly Administered)
Hon. Phillip J. Shefferly

**OPINION GRANTING MOTION PERMITTING
DEBTORS TO PAY THE NAGEL CLAIM AND ADJOURNING HEARINGS
ON CONFIRMATION AND MOTION TO APPOINT TRUSTEE**

**Introduction**

On the eve of confirmation of the debtors' plan of reorganization, the debtors filed a motion requesting authority to immediately pay in cash, in full, the allowed claim of their largest creditor. The motion also requests the Court to adjourn the confirmation hearing and a hearing on a motion to appoint a Chapter 11 trustee filed by the same creditor. Fearing that accepting payment in full of its claim in advance of confirmation will prevent it from having the opportunity to continue to litigate against the debtors by objecting to their plan and seeking the appointment of a trustee, the creditor opposes the motion and requests that the Court refuse to allow the debtors to pay the creditor's claim. For the reasons that follow, the Court will grant the debtors' motion, authorize the debtors to immediately pay in cash, in full, all of the creditor's allowed claim, and will adjourn the confirmation hearing and the hearing on the motion to appoint a trustee.

---

[1] The Debtors in these jointly administered cases are: RnD Engineering, LLC (case no. 14-58049), and Richalin Kamtchouang Digue (case no. 14-58053).

## Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (M).

## Facts

The following facts are not in dispute.

Nagel Precision Inc. ("Nagel") designs and manufactures superfinishing machines used in the automotive and other industries. On June 12, 2013, Nagel filed a state court lawsuit in the Washtenaw County Circuit Court for the State of Michigan ("State Court Case") against Richalin Digue ("Digue") and RnD Engineering, LLC ("RnD"), a Michigan limited liability company owned by Digue. Digue had previously worked for Nagel for many years, but had left Nagel and formed RnD to directly compete with Nagel. The complaint in the State Court Case contained counts for misappropriation of trade secrets, intentional interference with business relations, breach of fiduciary duty and unjust enrichment. Nagel sought both damages and an injunction to stop Digue and RnD from competing with Nagel.

Just before the trial in the State Court Case, Digue and RnD (collectively, the "Debtors") each filed a petition for relief under Chapter 11 of the Bankruptcy Code on November 20, 2014. The two Chapter 11 cases have been jointly administered. Nagel filed a proof of claim in each case. The Debtors objected to Nagel's claims. On February 27, 2015, Nagel also filed an adversary proceeding ("Adversary Proceeding") against the Debtors. Nagel's complaint in the Adversary Proceeding contained the same counts that Nagel brought in the State Court Case, plus three new counts seeking a determination that Nagel's claim against Digue is nondischargeable in his bankruptcy case under § 523(a) of the Bankruptcy Code. Based on the express agreement of the

parties, the Court entered an order providing for the Debtors' objections to Nagel's claims to be adjudicated as part of the Adversary Proceeding.

Following a nine day trial with a very extensive evidentiary record, Nagel prevailed on its claim for damages but not on its request for an injunction. On March 1, 2016, the Court issued a lengthy opinion ("Opinion") with detailed findings of fact and conclusions of law. The Opinion found that Digue breached his fiduciary duty to Nagel during the time he worked for Nagel, and found that both Debtors intentionally interfered with Nagel's business relations and had been unjustly enriched by doing so. The Opinion awarded Nagel damages to compensate it for the Debtors' misconduct, but denied Nagel's request for an injunction putting the Debtors out of business because Nagel failed to prove that the Debtors had misappropriated any of Nagel's alleged trade secrets, which was the sole basis for Nagel's request for injunctive relief. On the same day that it issued the Opinion, and for the reasons set forth in the Opinion, the Court entered a judgment ("Judgment") against the Debtors that awarded Nagel an allowed claim in each of the Chapter 11 cases in the amount of $564,503.16 ("Nagel Claim"). The Judgment also found that the Nagel Claim against Digue is nondischargeable in his bankruptcy case under § 523(a)(2)(A) and (a)(6) of the Bankruptcy Code.[2] No appeal of the Judgment was taken by any party.

With the Adversary Proceeding behind them, and having now liquidated the amount of the Nagel Claim, the Debtors continued their business and moved forward with their Chapter 11 cases. On April 1, 2016, the Debtors filed a First Amended Combined Plan of Reorganization and Disclosure Statement ("Plan"). The Plan described four classes of claims, and provided that all

---

[2] On July 11, 2016, on stipulation of the parties, the Court entered an order amending the Judgment to include an agreed amount of interest, which brought the amount of the Judgment, and the Nagel Claim, up to $586,003.16.

claims will be paid in full, no later than one year from the "effective date" of the Plan, defined in the Plan as being 60 days after the confirmation order becomes a final order. As for Nagel, the Plan placed the Nagel Claim in class II by itself, described that class as unimpaired,[3] and provided that the Nagel Claim will be paid in full on the effective date. The Court scheduled a confirmation hearing for May 16, 2016.

Despite the fact that the Plan proposed to leave the Nagel Claim unimpaired by paying it in full on the effective date, Nagel filed an objection ("Objection") to the Plan on May 9, 2016.[4] The Objection makes three basic arguments. First, the Plan is not feasible both because the Debtors do not have the cash to pay the Nagel Claim in full on the effective date, and because the Debtors' projections of future operations after payment of the Nagel Claim are not realistic. Second, the continuation of the Debtors' present management is not consistent with the best interest of creditors and equity holders and with public policy because the Court found in the Opinion that Digue's pre-petition conduct was dishonest and fraudulent. Third, the Plan does not satisfy the cramdown provisions of § 1129(b) of the Bankruptcy Code, which Nagel contends is necessary in this case because Nagel, as the sole holder of a class II claim, has not accepted the Plan.

At the confirmation hearing on May 16, 2016, the Debtors advised the Court that all classes of impaired claims had voted to accept the Plan, no objections to the Plan had been filed by any

---

[3] Impairment is described in § 1124 of the Bankruptcy Code. Under § 1126(f) of the Bankruptcy Code, a class of claims that is not impaired by a plan of reorganization is "conclusively presumed to have accepted the plan[.]" Section 1129(a)(8) only requires a class of impaired claims to accept a plan, not a class of unimpaired claims.

[4] Contemporaneous with filing the Objection, Nagel also filed a motion to appoint a Chapter 11 trustee. This was not the first time that Nagel filed a motion to appoint a trustee. Early in the Chapter 11 cases, on January 2, 2015, Nagel filed a motion to appoint a trustee which was denied on February 6, 2015.

-4-

creditor whose claim was impaired, and the United States Trustee ("UST") and the Debtors had agreed upon appropriate language for inclusion in a proposed confirmation order. Nagel was the only party who did not want the Plan confirmed. The Debtors requested the Court to find that Nagel did not have the right to object to the Plan because the Plan proposed payment in full of the Nagel Claim on the effective date and left Nagel unimpaired. Nagel countered that since the Nagel Claim would not be paid until 60 days after the confirmation order (i.e., on the effective date), Nagel retained the right to object to the Plan under § 1129 of the Bankruptcy Code, despite the Plan's characterization of Nagel as unimpaired.

In an effort to minimize the issues in dispute between the parties, and avoid unnecessary litigation, specifically concerning the question of whether the Debtors actually had the funds necessary to pay the Nagel Claim in full on the effective date, the Court required the Debtors to place on deposit, pursuant to Fed. R. Bankr. P. 3020(a), sufficient funds to pay the Nagel Claim in full on the effective date, as proposed by the Plan. The Debtors stated that they did not have the funds on hand that day, but that they would have the funds by August 1, 2016, the date that the Debtors projected to be the effective date if the Plan was confirmed at the confirmation hearing scheduled on May 16, 2016. Given the relatively short time until the date that the Debtors projected that they would have the funds, and because it appeared to the Court that payment by the Debtors of the Nagel Claim in full could potentially end years of acrimonious litigation between Nagel and the Debtors, the Court entered an order ("Deposit Order") (ECF No. 169) on May 17, 2016 that adjourned the confirmation hearing until August 3, 2016 and required the Debtors to deposit by that date the funds necessary to pay the Nagel Claim in full.

The Court had an another reason to adjourn the confirmation hearing: to allow the parties to brief a legal issue ("Impairment Issue") that arose during the confirmation hearing. The Court

-5-

stated the Impairment Issue in the Deposit Order as follows: "if the Court finds that Nagel is unimpaired under § 1124 of the Bankruptcy Code by the Plan, does Nagel have standing to raise objections to the Plan under § 1129(a) of the Bankruptcy Code?" The Deposit Order set a deadline for the parties to brief the Impairment Issue well in advance of the adjourned confirmation hearing.

Nagel and the Debtors filed timely briefs with respect to the Impairment Issue. On June 24, 2016, the Court held a hearing on the Impairment Issue. Following the hearing, the Court entered an order ("Impairment Order") (ECF No. 180) that specifically held that "even if Nagel is unimpaired by the Plan under § 1124 of the Bankruptcy Code, Nagel still has standing to raise objections to confirmation of the Plan under § 1129(a) of the Bankruptcy Code."

On August 2, 2016, the day before the adjourned confirmation hearing, the Debtors took a new approach. Rather than waiting to see if they could defeat the Objection and confirm the Plan before paying Nagel, the Debtors filed a motion ("Motion") (ECF No. 183) requesting authority to immediately pay the Nagel Claim in full. The Motion alleges that the Debtors now have sufficient funds available to immediately pay the Nagel Claim in full, and the Debtors attach to the Motion a bank statement showing that $593,000.00 has been deposited in a special debtor in possession bank account, in a form approved by the UST, for the exclusive purpose of paying the Nagel Claim. The Motion alleges that the funds consist of a combination of proceeds that are property of the Debtors' bankruptcy estates plus a gift from Digue's family members in the amount of $231,290.00.[5] The Motion requests permission to immediately pay the Nagel Claim in cash, in full, and explains that once the Debtors have done so, Nagel will no longer be a party in interest in the Debtors' bankruptcy

---

[5] The funds that are property of the bankruptcy estates are described as consisting of $250,000.00 paid by a current customer of RnD, cash reserves of the Debtors of $30,000.00, and $81,500.00 of proceeds owned by the Debtors and held in the client trust accounts of the two law firms representing the Debtors, Stevenson & Bullock, P.L.C., and Rivenoak Law Group.

cases and the Debtors will be able to move forward to request confirmation of the Plan without the Court having to hear the Objection and without any further litigation with Nagel. The Debtors filed an ex parte motion requesting the Court to hear the Motion on an expedited basis just prior to the adjourned hearing on confirmation and on the motion to appoint a Chapter 11 trustee. The Court agreed to do so.

On August 2, 2016, Nagel filed a response (ECF No. 186) to the Motion. Even though granting the Motion would mean immediate payment in cash, in full, of the Nagel Claim, Nagel nonetheless requested the Court to deny the Motion so that Nagel could remain a creditor and could continue to litigate against confirmation of the Plan and to seek appointment of a trustee. No other responses were filed to the Motion.

On August 3, 2016, the Court heard the Motion. The Debtors confirmed that they were ready, willing and able to immediately pay the Nagel Claim in cash, in full, without any conditions or qualifications. The UST was present at the hearing and supported the Motion, reasoning that payment by the Debtors of their largest debt, owed to their principal antagonist, would have a beneficial effect on their cases and bring them to a successful conclusion. Nagel, however, continued to object and elaborated on its reasons during the hearing.

First, Nagel expressed a concern about the source of the funds because the Motion explained that of the funds on deposit, $231,290.00 came from a gift made by Digue's family members to him. Second, Nagel objected that the Motion circumvents and violates the Deposit Order. Third, Nagel argued that payment in full of the Nagel Claim would "trample on Nagel's due process rights" because it would prevent Nagel from continuing to litigate against the Debtors. Nagel's counsel explained that "This is not just about the money, it never has been. My company believes that it was done wrong."

Because the Motion was set for hearing on an expedited basis, Nagel requested that it be permitted to file a supplement to its response to the Motion after the hearing. The Court granted that request and also permitted the Debtors a brief period in which to reply to Nagel's supplement. The Court then took the Motion under advisement.

**Discussion**

The Motion directly raises two legal issues. First, what legal authority exists to support the Debtors' request to pay the Nagel Claim, which is a pre-petition debt? Second, does Nagel have a legal right to refuse payment in full of its allowed claim?

Regarding the first issue, the Debtors cite § 105(a) of the Bankruptcy Code as providing the requisite legal authority. Section 105(a) authorizes a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Nagel does not quarrel with the Debtors' assertion that § 105(a) provides sufficient authority for the Court to grant the Motion but, for reasons explained later in this opinion, argues that the Court should not exercise such authority in this instance. The Court does not dispute the parties' agreement that § 105(a) provides a legal basis to grant the Motion,[6] but there are other provisions in the Bankruptcy Code that also provide authority for the Court to permit the Debtors to pay the Nagel Claim.

Section 1107(a) of the Bankruptcy Code describes the rights, powers and duties of a Chapter 11 debtor in possession. It provides that "[s]ubject to any limitations on a trustee serving in a [Chapter 11] case, . . . a debtor in possession shall have all the rights, . . . and shall perform all

---

[6] Courts have frequently cited § 105(a) as providing the power for a bankruptcy court to authorize a debtor in possession to pay a pre-petition debt owed to a "critical vendor." See, e.g., In re Corner Home Care, Inc., 438 B.R. 122, 125-26 (Bankr. W.D. Ky. 2010) (explaining how the critical vendor motion evolved from the doctrine of necessity and its statutory basis in § 105(a), and citing cases within the Sixth Circuit).

of the functions and duties . . . , of a trustee serving in a case under" Chapter 11. Section 363(b)(1) of the Bankruptcy Code provides that a bankruptcy court may authorize a trustee, after notice and a hearing, to use property of the estate "other than in the ordinary course of business[.]" That is essentially what the Motion seeks to do by taking property of the Debtors' estates and using it to pay a pre-petition debt owing to Nagel.[7]

Fed. R. Bankr. P. 6003 and 6004 govern the procedure for a trustee – or in a Chapter 11 case, a debtor in possession – to seek permission to use property of the estate other than in the ordinary course of a business. The only reference in these rules to the use of property of the estate to pay a pre-petition claim appears in Fed. R. Bankr. P. 6003(b), which does not preclude the use of property of the estate to pay a pre-petition claim, but instead limits a debtor in possession's right to use property of the estate to pay a pre-petition claim only during the first 21 days following the filing of a bankruptcy petition. As the Debtors filed their bankruptcy petitions on November 20, 2014, this limitation has long since expired and does not restrict the Court's authority to grant the Motion.

Sections 363(b)(1) and 1107(a) provide statutory authority, in addition to § 105(a), for the Court to permit the Debtors to use property of the estate to pay the Nagel Claim.

The second legal issue concerns whether Nagel has the right to refuse payment. Neither Nagel nor the Debtors cite any authorities regarding whether a creditor holding an allowed claim in a bankruptcy case can refuse to accept payment. Perhaps because it is rare for a creditor to refuse

---

[7] As noted earlier, not all of the money in the special debtor in possession account is comprised of property of the bankruptcy estates. The Motion alleges, and Digue's testimony at the August 3, 2016 hearing demonstrates, that $231,290.00 of the funds on deposit consist of a gift from Digue's family members made to him and RnD for the express purpose of paying the Nagel Claim. Because those proceeds are not property of the Debtors' bankruptcy estates, in contrast to the balance of the funds in the special debtor in possession account, no permission of this Court is required to pay them to Nagel. Digue's family members who are making this gift, for the express purpose of paying Nagel, are not themselves debtors in a bankruptcy case.

-9-

payment in full, the Court also found no authority on this subject. The authorities cited by Nagel in its brief do not support its contention that it can somehow refuse payment of its allowed claim, and Nagel provided no additional citations in its supplement, which consists solely of a proposed order that is silent on this issue. Nagel does not have the right to refuse to accept full payment of the Nagel Claim if the Court grants the Motion.

Having considered these two legal issues, it does not appear to the Court that there is any serious dispute either that the Court has the power to grant the Motion or that Nagel must accept full payment of the Nagel Claim if the Court grants the Motion. But, as noted earlier, even if the Court has the power to grant the Motion, Nagel argues that there are compelling reasons why the Court should not exercise such power in the circumstances of this case.

First, Nagel expresses a concern over the source of the funds that the Debtors intend to use to pay the Nagel Claim, specifically the $231,290.00 that is described in the Motion as a gift from Digue's family members. Although the reasons for Nagel's concern over this fact are not entirely clear to the Court, Nagel suggests that there is something improper going on. At the hearing on August 3, 2016, Digue testified that he is from a large family with twelve siblings and that he has asked them for help to pay the Nagel Claim. Digue testified that a number of his siblings contributed to the $231,290.00 gift and that they all agree that the Debtors have no obligation to repay this sum. While the source of the $231,290.00 and whether it is truly a gift are legitimate and understandable questions for Nagel to ask, Digue's testimony proves that these funds are just what the Motion describes them as: a gift from family members to help the Debtors pay the Nagel Claim, which is a nondischargeable debt in Digue's bankruptcy case. These facts do not provide a reason to deny the Motion.

Second, Nagel argues that the Motion should be denied because the Debtors' request to pay the Nagel Claim in full circumvents and violates the Deposit Order. Specifically, Nagel argues that the Deposit Order required the Debtors to deposit sufficient funds pursuant to Fed. R. Bankr. P. 3020(a) "in a special debtor in possession account established for the exclusive purpose of making a distribution to Nagel upon confirmation of the Plan." Nagel reads the Deposit Order, which was entered by the Court for Nagel's benefit – to ensure that the Debtors would have sufficient funds to pay the Nagel Claim if the Debtors confirmed the Plan – as somehow precluding the Debtors from requesting permission to pay the Nagel Claim *in advance of* confirmation. This reading finds no support in the language of the Deposit Order. Moreover, if accepted, this construction of the Deposit Order would have the perverse effect of delaying Nagel from getting paid in full, defeating the very purpose of the Deposit Order. The Deposit Order neither says nor can it be reasonably construed as implying that it precludes the Debtors from seeking permission to pay the Nagel Claim in full *in advance of* confirmation. The Motion does not circumvent or violate the Deposit Order.

Nagel's third argument gets to the heart of Nagel's opposition to the Motion: that the Debtors' full payment of the Nagel Claim would "trample on Nagel's due process rights," and violate the public interest. The due process rights and the public interest that Nagel refers to are Nagel's rights to continue to object to confirmation of the Plan and to seek the appointment of a trustee to liquidate the Debtors and their business. Underlying this argument is Nagel's fear that the Court may hold that Nagel, once the Nagel Claim has been paid in full, will no longer have the right to be heard at the confirmation hearing or at a hearing to consider whether to appoint a trustee. When asked by the Court at the hearing on August 3, 2016 why Nagel would still want to litigate against the Debtors even after the Nagel Claim is paid in full, Nagel's counsel explained that the

Debtors should not be allowed "to continue to operate in this industry, that they will be a continued risk to our business, it will be a continued risk to this industry and Mr. Digue is not in a position to continue as a member of this particular community."  When further pressed by the Court, Nagel's counsel expressed Nagel's belief that Digue is a "bad guy" who should be "put out of business so he doesn't do something bad in the future."  Simply put, regardless of whether the Debtors pay Nagel in full, Nagel wants to continue to litigate against the Debtors for the express purpose of putting them out of business.

Nagel's desire to keep fighting the Debtors raises the question of who has the right to appear and be heard in a Chapter 11 case.  Section 1109 of the Bankruptcy Code directly addresses this issue.  Section 1109(b) provides that a "party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."  More specifically, § 1128(b) of the Bankruptcy Code provides that "[a] party in interest may object to confirmation of a plan," and § 1104(a) of the Bankruptcy Code provides that a party in interest may move for the appointment of a trustee.

Outside of the examples listed in § 1109(b), the Bankruptcy Code does not define "party in interest."  Under the Bankruptcy Code's rules of construction, § 102(3) provides that the terms "'includes' and 'including' are not limiting[.]"  "[T]herefore, 'party in interest' is not confined to the list of examples provided in section 1109(b)." Vermejo Park Corp. v. Kaiser Coal Corp. (In re Kaiser Steel Corp.), 998 F.2d 783, 788 (10th Cir. 1993) (citation omitted).  Published cases have found four other examples of a party in interest.  First, "'[t]he phrase is generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceedings.'" Morton v. Morton (In re Morton), 298 B.R. 301, 306 (B.A.P. 6th Cir. 2003) (quoting In re Davis,

239 B.R. 573, 579 (B.A.P. 10th Cir. 1999)). Second, it includes "'anyone who has an interest in the property to be administered and distributed'" in a case. Id. (applying this example to distributions under a Chapter 13 plan) (quoting In re Davis, 239 B.R. at 579). Third, a party in interest may also be "anyone who has a practical stake in the outcome of a case, and those who will be impacted in any significant way in the case." Id. at 307 (quotation marks and citations omitted). Last, "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains." In re James Wilson Associates, 965 F.2d 160, 169 (7th Cir. 1992). See also Moran v. LTV Steel Co., Inc. (In re LTV Steel Co., Inc.), 560 F.3d 449, 452-53 (6th Cir. 2009) (addressing standing on appeal, noting that it is "more limited than Article III standing or the prudential requirements associated therewith," and finding that it requires "a direct financial stake in the order such that it diminishes [ ] property, increases [ ] burdens, or impairs [ ] rights") (internal quotation marks and citations omitted).

"Creditor" is defined in § 101(10)(A) of the Bankruptcy Code as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[.]" "Claim" is defined in § 101(5)(A) of the Bankruptcy Code as a "right to payment[.]" As the holder of a claim (i.e., the Nagel Claim), Nagel is a creditor of the Debtors. As a creditor, Nagel is undoubtedly a party in interest under § 1109(b). If the Court grants the Motion, the Nagel Claim will be paid in full and Nagel will no longer be a creditor since Nagel does not identify any other debt that is owed to it by the Debtors, nor has it filed any claim in the Chapter 11 cases other than the Nagel Claim, and the claims bar date has long since passed. If Nagel is not a creditor, then how can it be a party in interest for purposes of § 1109(b)?

The only relationship that Nagel will have to the Debtors, once the Nagel Claim has been paid in full, is that of a competitor to the Debtors in the business of designing and manufacturing

superfinishing machines. Although § 1109(b) of the Bankruptcy Code does not provide an exclusive list of relationships, it does not list a competitor of a debtor as a party in interest with a right to appear and be heard in such debtor's Chapter 11 case. Nor does Nagel identify a single reported decision holding that a competitor of a debtor is a party in interest with a right to appear and be heard under § 1109(b). Some of the cases that Nagel cites relate to the Impairment Issue (i.e., whether a creditor described in a plan of reorganization may still object to the plan). But that is an entirely different issue, one that the Court has already ruled on in Nagel's favor in the Impairment Order.[8] The issue now before the Court is whether a party who is no longer a creditor of a debtor, whose only remaining relationship with the debtor is that of a business competitor, remains a party in interest in the Chapter 11 case. Having a financial interest in the superfinishing machine industry is not the same thing as having a financial interest in the Debtors' Chapter 11 cases. Nagel's status as a business competitor of the Debtors does not make it a party in interest with the right to be heard in these cases under § 1109(b).

Nagel's fear that the Court may not permit Nagel to prosecute its Objection to the Plan or pursue its motion to appoint a trustee once the Nagel Claim has been paid in full is well founded. Once the Nagel Claim is paid, Nagel will no longer be a creditor. And Nagel has identified no other

---

[8] During the hearing on August 3, 2016, the Court inquired of Nagel's counsel what authority Nagel has to support its contention that even after the Nagel Claim is paid in full, Nagel will still be a party in interest. Nagel's counsel directed the Court to case law cited in its brief on the Impairment Issue. In that brief, Nagel relied in part on In re Farmland Industries, Inc., 294 B.R. 855 (Bankr. W.D. Mo. 2003). Farmland addressed the ability of unimpaired creditors to object to confirmation. The court found that "[e]ven so-called unimpaired creditors should be allowed to raise objections to a plan on the basis of good faith, feasibility, and other generalized confirmation requirements, as well as to contest the categorization as being unimpaired." Id. at 891. In the Impairment Order, this Court has already agreed with the general principle articulated in Farmland. Nagel misses the distinguishing point that even though they were unimpaired by the plan, the objecting parties in Farmland were still *creditors* who remained unpaid under a plan that was fatally deficient and unconfirmable.

status or relationship to the Debtors that qualify it as a party in interest under § 1109(b) with the right to object to confirmation under § 1128(b) or request the appointment of a trustee under § 1104(a).

Nonetheless, Nagel argues that even if it is no longer a party in interest once the Nagel Claim is paid, it is important to the integrity of the bankruptcy process that Nagel be permitted to continue to litigate against the Debtors in these cases because the Opinion found that the Debtors engaged in dishonest and fraudulent conduct. Nagel seems to believe that because of those findings, the Debtors should not be allowed to remain in business.[9] But the point missed by Nagel is that the Court has already ruled in the Opinion that Nagel is not entitled to any injunction against the Debtors. The Opinion awarded Nagel substantial monetary damages, but explained in detail the reasons why Nagel failed to prove that it was entitled to enjoin the Debtors from continuing in business. Nagel did not appeal from the Judgment that was rendered pursuant to the Opinion. Nagel no longer has any legal basis to try to put the Debtors out of business.

Nagel is correct that the integrity of the bankruptcy process is an important consideration to the Court. Regardless of whether the Nagel Claim is paid or not prior to confirmation, the Court has

---

[9] Nagel also relied in its brief on the Impairment Issue on <u>Global Industrial Technologies, Inc.</u>, 645 F.3d 201 (3d Cir. 2011) in arguing that it has standing to "aid the Court in protecting the integrity of the bankruptcy process." In <u>Global Industrial</u>, there were allegations of collusion between the debtors and creditors, where fraudulent claims would be allowed in exchange for support of the plan. The appellate court found this to be "a profoundly serious charge and not without record support." <u>Id.</u> at 214. The appellate court reversed the bankruptcy court's finding that the insurance companies had no standing, based on the insurers' interest in essentially funding the plan and their interest in investigating fraudulent claims. Nagel sees itself as being in the same position as the insurers in <u>Global Industrial</u>, not as the funders of a plan but in the role as sleuth and watchdog. Nagel speculates that Digue may resort to illegal conduct in the future, potentially harming Nagel and the entire superfinishing machine community in the process. Such speculation about the future does not give Nagel the right to continue to litigate in these Chapter 11 cases after the Nagel Claim has been paid in full.

-15-

an independent duty under § 1129(a) of the Bankruptcy Code to consider whether all of the elements necessary for confirmation of the Plan are present at the confirmation hearing. The Court fully intends to perform that duty. But that does not mean that Nagel gets to continue fighting the Debtors in these Chapter 11 cases once the Nagel Claim is paid. Once the Nagel Claim is paid in full, Nagel will no longer be a creditor. Therefore, it will not be a party in interest, and will not be permitted to prosecute its Objection to the Plan or its motion to appoint a trustee. The Court has no doubt of the sincerity of Nagel's stated objective in litigating with the Debtors – to put them out of business. But these are Chapter 11 cases. Only parties in interest have a right to appear and be heard in them. Nagel's self-appointment as the guardian of the public interest finds no support in the law. After the Nagel Claim has been paid in full, the Court will not permit Nagel to use these Chapter 11 cases to indulge its desire to put the Debtors out of business, no matter how understandable Nagel's anger at the Debtors' pre-petition misconduct.

## **Conclusion**

There is ample legal authority to grant the Motion. Nagel has failed to provide a sound reason why the Court should not grant the Motion and permit the Debtors to immediately pay the Nagel Claim in full. The Court will enter an order consistent with this opinion granting the Motion.

.

**Signed on August 15, 2016**

                                          **/s/ Phillip J. Shefferly**
                                      **Phillip J. Shefferly**
                                      **United States Bankruptcy Judge**